IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO.   20-388 |
| BRIHANY BAKER | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its attorneys, Jennifer Arbittier Williams, United States Attorney for the Eastern District of Pennsylvania, and Michael R. Miller, Assistant United States Attorney for the District, hereby files this memorandum in aid of sentencing.

On July 9, 2020, defendant Brihany Baker lied on a federal form and illegally purchased three semi-automatic firearms for her boyfriend, Donte Maxwell.   The defendant straw purchased the firearms and endangered her community even though she knew Maxwell was under indictment for serious weapons offenses.   The defendant then failed to accept responsibility for her crimes and instead proceeded to a jury trial, where she was convicted of criminal conspiracy and making false statements to a federal firearms licensee.   The defendant lied in an attempt to inject three more firearms into a city plagued by gun violence, and the Court should sentence her at the high end of the guidelines range of 21 to 27 months.

I.   **BACKGROUND**

   a.   **Legal Background**

On November 5, 2020, a grand jury indicted the defendant for criminal conspiracy, in violation of 18 U.S.C. § 371, and making false statements to a federal firearms licensee, in violation of 18 U.S.C. § 924(a)(1)(A).   One year later, on November 9, 2021, a jury convicted her of both crimes.   The Court has scheduled a sentencing hearing in this matter for February

18, 2022.

    b.    **<u>Factual Background</u>**

On July 1, 2020, ATF Agent Jared Krzywicki and other agents were conducting surveillance outside Clayton's Range, a federal firearms licensee ("FFL") in Horsham, Pennsylvania, when they observed the defendant and Donte Maxwell enter the store. Agents suspected Maxwell of previously receiving guns from a straw purchaser,[1] so Agent Krzywicki called a store employee and requested that he delay any sale of firearms to the defendant. The store agreed to this request, and the defendant and Maxwell subsequently left Clayton's.

The following day, Agent Krzywicki obtained the ATF Form 4473 that the defendant had filled out on July 1. The Form 4473 showed that the defendant tried to buy three semi-automatic firearms and certified that she was the actual buyer of the guns. The guns were a Taurus, Model G3, 9mm pistol, bearing serial number ABE610985; a Taurus, Model G3, 9mm pistol, bearing seral number ABG640702; and a KelTec, Model PMR30, .22WMR caliber pistol, bearing serial number WXJM77. Store video showed the defendant filling out paperwork while attempting to purchase the guns. However, Donte Maxwell handled and examined two of the guns that the defendant tried to purchase, and Maxwell took $200 cash out of his pocket to place a deposit on the three guns.

On July 8, 2020, the defendant and Maxwell returned to Clayton's to try to purchase the firearms Maxwell had placed a deposit on, but store employees told them that the background

---

[1] A "straw purchase" occurs when an individual tells a gun dealer that she is buying firearms for herself, but actually purchases them for another individual.

check would not go through, and then informed Agent Krzywicki that the defendant and Maxwell would return the next day.

On July 9, 2020, Agent Krzywicki and his fellow agents again set up surveillance outside Clayton's. At 11:50 a.m., the defendant and Maxwell returned to the store. The defendant then purchased the three firearms that Maxwell had placed a $200 deposit on eight days earlier. The defendant certified on the Form 4473 for the purchase that she was the actual buyer of the firearms and that she was not purchasing them for another individual.

After the defendant and Maxwell left the store, a store employee telephoned Agent Krzywicki and told him that the couple had completed the purchase of three firearms. Based on his training and experience, Agent Krzywicki knew that the defendant could not complete the purchase without certifying on a federal Form 4473 that she was the actual buyer of the firearms. Agent Krzywicki observed the couple place the purchase into a car that Maxwell was driving, and then followed the couple to Philadelphia, whereupon the defendant and Maxwell were placed under arrest by Philadelphia police officers. Agent Krzywicki and a Philadelphia police officer searched the car and found a Taurus firearm inside a box, the other Taurus and the KelTec in the center console, and a Smith and Wesson, Model SD40V3, .40 caliber pistol, bearing serial number FBJ5198, under the front seat cup holder.

ATF agents conducted a video-recorded, Mirandized interview of the defendant approximately one hour and 45 minutes after her arrest. The defendant signed a *Miranda* waiver form prior to giving her statement. The defendant initially denied that she bought the guns for Maxwell, but admitted that the guns cost more than $1,000, that she did not know much

3

about guns, that she did not know the model of any of the guns she purchased, that Maxwell picked the store to go to, that it was his idea to go to a gun store, and that he paid for the guns. Additionally, the defendant – who has dated Maxwell for three years – also admitted that she knew Maxwell had been arrested and charged with firearms offenses approximately two months earlier.   The defendant then confessed that she bought the firearms for Maxwell.

## II.     STATUTORY MAXIMUM PENALTIES

Criminal Conspiracy (Count One)

The statutory maximum penalty for 18 U.S.C. § 371 is five years' imprisonment, three years of supervised release, a fine of $250,000, and a $100 special assessment.

Making a False Statement to a Federal Firearms Licensee (Count Two)

The statutory maximum penalty for 18 U.S.C. § 924(a)(1)(A) is five years' imprisonment, three years of supervised release, a fine of $250,000, and a $100 special assessment.

Total Maximum Sentence

The defendant faces a maximum sentence of 10 years' imprisonment, three years of supervised release, a fine of $500,000, and a $200 special assessment.

## III.    SENTENCING GUIDELINES CALCULATION

The United States Probation Office correctly calculated the defendant's advisory sentencing guidelines range as 21 months to 27 months, resulting from a final offense level of 16 and a criminal history score of I.   The defendant agrees that she faces a two-point enhancement

for straw purchasing three firearms, but contests whether her base offense level is 14 rather than 12.

The Probation Office correctly concluded that the defendant has a base offense level of 14, because she was "convicted under . . . § 924(a)(1)(A) and committed the offense with knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm . . . to a prohibited person."  *See* USSG § 2K2.1(a)(6).  Application Note 3 of the guidelines defines a prohibited person as "any person described in 18 U.S.C. § 922(g) or § 922(n)."  Moreover, § 922(n) bars "any person who is under indictment[2] for a crime punishable by imprisonment for a term exceeding one year" from possessing a firearm.

At the time the defendant straw purchased three firearms, Maxwell had pending charges for illegally possessing a firearm in violation of 18 Pa. Cons. Stat. §§ 6106 and 6108.  *See Commonwealth v. Maxwell*, MC-51-CR-0010150-2020.  The Third Circuit Court of Appeals has established that both these crimes constitute a "crime punishable by imprisonment for a term exceeding one year" for purposes of 18 U.S.C. § 922.  *See Dutton v. Commonwealth of Pa.*, 503 F. App'x 125, 127 (3d Cir. 2012).  Moreover, the defendant has admitted that she knew Maxwell was facing firearms charges at the time she straw purchased three guns for him.  *See* Presentence Investigation Report at ¶ 17; Government Exhibit 6 (video of defendant admitting in her confession that Maxwell was arrested "a month or two ago" for illegally possessing a firearm).

---

[2] An individual charged by information rather than indictment also qualifies as a prohibited person.  *See United States v. Gevedon*, 214 F.3d 807, 813 (7th Cir. 2000); *United States v. Shepardson*, 196 F.3d 306, 311 (2d Cir. 1999).

5

Given the foregoing, the defendant clearly had "reason to believe" that her offense "would result in the transfer of a firearm . . . to a prohibited person." USSG § 2K2.1(a)(6). For instance, in *United States v. Pawlak*, 822 F.3d 902 (6th Cir. 2016), *abrogated on other grounds by Beckles v. United States*, 137 S. Ct. 886 (2017), the Sixth Circuit Court of Appeals held that the government had shown a defendant "had reason to believe" he was transferring firearms to a prohibited person. *Id.* at 912-913. The government met its burden by pointing to circumstantial evidence, such as the fact that the defendant sold firearms surreptitiously for a price above market value. *See id.* at 912. Here, the defendant had <u>direct knowledge</u> that her boyfriend was facing gun charges at the time she bought him firearms. The evidence in this case is far stronger than that in *Pawlak*, and the defendant's base offense level is 14.[3]

## IV. CONSIDERATION OF THE 3553(a) FACTORS

The Supreme Court has declared, "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" of a sentencing decision. *Gall v. United States*, 552 U.S. 38, 49 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

The Court must consider all of the sentencing factors set forth in 18 U.S.C. § 3553(a) in determining the appropriate sentence in this case. The Section 3553(a) factors include: (1) the

---

[3] The defendant attempts to lower her offense level by analogizing her case to *Rehaif v. United States*, 139 S. Ct. 2191 (2019). But *Rehaif* interpreted a statute that required a defendant to "knowingly" engage in certain conduct. *Id.* at 2194. By contrast, USSG § 2K2.1(a)(6) applies if a defendant had "reason to believe" she was sending guns into the hands of a prohibited person.

nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.   18 U.S.C. § 3553(a).[4]

### A. The nature and circumstances of the offenses and the history and characteristics of the defendant.

The defendant purchased three semi-automatic firearms for her boyfriend even though she knew he was under indictment for illegally possessing a gun.   She bought the firearms by lying on a federal form and falsely stating that she was the actual purchaser of the guns, even though the form stated that making such a false statement constitutes a federal crime.   Then, instead of accepting responsibility for her crimes, she proceeded to trial.

---

[4] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."   The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'"   *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (quoting *United States v. Navedo-Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

The defendant's straw purchase of three deadly weapons would constitute egregious conduct under any circumstances. Yet her actions are particularly appalling at a time when Philadelphia, wrecked by gun violence, has undergone the bloodiest year in the history of the city. In 2021 alone, 562 murders occurred in Philadelphia, and more than 2,300 people were shot. The defendant attempted to inject three more firearms into this cauldron of violence, and the Court should sentence her at the high end of the guidelines.

> **B.    The need for the sentence imposed to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses.**

The defendant committed two serious felonies when she straw purchased three semi-automatic firearms. Moreover, while the typical straw purchaser will only lie one time on a federal form, the defendant exhibited additional disrespect for the law by lying on the ATF Form 4473 multiple times. She lied on the form that she completed on July 1, 2020, by stating that she was the actual purchaser of the firearms, and then lied again when she filled out another form on July 9, 2020. Such repeated dishonesty, undertaken even though a Form 4473 warns purchasers that lying on it constitutes a federal crime, merits a sentence at the high end of the guidelines.

> **C.    The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.**

This case presents a clear need for both general and specific deterrence. The defendant has exhibited her willingness to break the law by lying on a Form 4473 on multiple occasions. Moreover, Philadelphians are suffering through an unprecedented epidemic of gun violence. Straw purchasers fuel shootings, homicides, and carjackings by placing guns into the hands of

felons and prohibited persons. The defendant attempted to inject three more firearms into Philadelphia, and the Court can send a message to other straw purchasers by sentencing her at the top end of the guidelines.

>   D.  **The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

The defendant has no educational or medical needs that justify reducing her sentence. She is 25 years old, describes her overall physical health as good, and has never suffered from any mental health or substance abuse problems. To the extent that the defendant wishes to further her education or vocational training, a sentence at the high end of the guidelines will not inhibit those efforts. While in the custody of the Bureau of Prisons, and while on supervised release, the defendant can, if she wishes, avail herself of a variety of opportunities for training and education.

>   E.  **The guidelines and policy statements issued by the Sentencing Commission and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

Finally, giving the defendant a sentence at the high end of the guidelines will avoid creating an unwarranted disparity between her and similarly situated criminals. Although under "18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," *Kimbrough v. United States*, 552 U.S. 85, 89-91 (2007), it remains the case that "the [Sentencing] Commission fills an important institutional role: It has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise," *id*. at 109 (internal quotation omitted). The Supreme Court has thus recognized that, in the ordinary

case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough*, 552 U.S. at 109 (quoting *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007)). Moreover, "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007).

Here, a guidelines sentence at or approaching 27 months' incarceration would fairly punish the defendant for her criminality. Moreover, such a sentence would ensure uniformity between the defendant's punishment and that of other criminals who have committed similar crimes. The Court should thus give the defendant a sentence at the high end of the guidelines.

## V. CONCLUSION

The defendant attempted to inject three semi-automatic firearms into the hands of a prohibited purchaser who lived in a city plagued by gun violence. The Court should impose a sentence at the high end of the guidelines range to fairly punish the defendant for her crimes and to deter others from engaging in similar destructive and dangerous behavior.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
United States Attorney


*/s/ Michael Miller*
MICHAEL MILLER
Assistant United States Attorney

CERTIFICATE OF SERVICE

     I certify that a true and correct copy of the Government's Sentencing Memorandum has been served by electronic mail upon Lawrence J. Bozzelli, Esq., and Probation Officer Talia Santella.

                                         */s/ Michael R. Miller*
                                         MICHAEL R. MILLER
                                         Assistant United States Attorney

Date: February 10, 2022