**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| vs. | : | Crim. No. 2:20-CR-388 |
| | : | |
| **BRIHANY BAKER** | : | |
| | : | |

**DEFENDANT'S SENTENCING MEMORANDUM AND**
**REQUEST FOR A DOWNWARD VARIANCE**

Brihany Baker, through her counsel Lawrence J. Bozzelli, respectfully submits the following Sentencing Memorandum in the above cited case.

In short, Baker would ask that your Honor not apply the +2 point increase to the base offense level as outlined below. The defendant is first requesting that your Honor find the applicable Guideline range to be 15 – 21 months based on a final offense level of 14. The defendant would then ask the Court to apply a downward variance and sentence the defendant in the 12 – 18 range [Zone C]. Finally, the defendant would ask that your Honor impose a split sentence of 6 months incarceration followed by 6 months to be served on home confinement.

**I.     INTRODUCTION**

On November 5, 2020, a grand jury sitting in the Eastern District of Pennsylvania returned a 2-count Indictment charging Brihany Baker with conspiracy, in violation of 18 U.S.C. § 371 [Count 1], and making false statements to a federal firearms licensee, in

1

violation of 18 U.S.C. § 924(a)(1)(A) [Count 2].  On November 9, 2021, the defendant was found guilty of Counts 1 and 2 of the Indictment following a jury trial before the Honorable Juan R. Sánchez.

## II.     DEFENDANT'S BACKGROUND AND LIFE CIRCUMSTANCES

Brihany Mahannah Baker was born on September 4, 1996, in Philadelphia, Pennsylvania.  The defendant's father, who suffers from diabetes, currently resides in a senior living facility in Philadelphia. Her mother died on September 1, 2021 (age 40s), as a result of lung cancer. According to the defendant, she has telephone contact with her father "once in a blue."  The defendant reported that she was reared solely by her father, as her mother was "in the streets" and addicted to drugs.  She noted that she never had a mother figure and only reconnected with her mother approximately two years prior to her mother's death when she had achieved sobriety. When asked to describe her childhood, the defendant replied, "It was quiet…lonely." She recalled that she attended public school as a youth and was a violinist in elementary school. When she reached high school, she participated in track and field and also took part in hip hop dancing. The defendant denied any history of juvenile issues or relationships with negative peers, and she commented, "I kept out of trouble."  Probation interviewed Anna Lee Coates and she described the defendant as hardworking and recalled that she had to be at work at 6:00 a.m. when she worked "at the stadium" (Citizens Bank Park in Philadelphia). She also noted that she has excelled in her current position and stated, "I know she's had at least three promotions at this job."  Mrs. Coates also described the defendant as "very, very sweet" and "quiet and reserved." She added that she is "soft-spoken" and has a tendency

2

to not "advocate for herself." Mrs. Coates noted that she tries "to be the voice of reason" for the defendant, and she encourages her to "speak up for herself." She added that she is very faithful and very loyal and can be "a bit of a pushover." [PSR¶40-51].

### III. POST-BOOKER SENTENCING IN THE THIRD CIRCUIT

In a series of post-*Booker* cases, the Third Circuit has distinguished itself among the circuits by its treatment of the sentencing guidelines as merely advisory. As your Honor is aware, a sentencing court has authority to deviate from the advisory Guidelines under either § 3553(a) or § 4A1.3.

A. Substantive Reasonableness

In the body of case law it has developed thus far, where it has examined the substantive reasonableness of sentences, the Court has been consistently deferential to sentencing judges, regardless of whether the sentence falls within the guideline range, or above or below the range. Its first published opinion on this issue, *United States v. Cooper*, 437 F.3d 324 (3d Cir. 2006), held that the guidelines do not enjoy a presumption of reasonableness and that courts are free to disregard the range in light of other sentencing factors set forth in 18 U.S.C. § 3553(a). The appellate court therefore has jurisdiction to review all sentences for reasonableness, including those imposed within the guideline range. Id.

A court may impose a non-guideline sentence for reasons that are prohibited under the guideline system. *United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006)(crack/powder cocaine penalty differential). Moreover, factors that do not justify a departure under the guideline system may be viewed with greater latitude so as to

3

justify a non-guideline sentence under §3553(a). *United States v. Jackson*, 467 F.3d 834, n.8 (3d Cir. 2006)(extraordinary acceptance of responsibility).

### B. Three-Step Procedure for Imposing Sentence

The Third Circuit has shown a more conservative approach to the methodology the courts must utilize when imposing a criminal sentence. The Circuit has adopted a three-step procedure which requires a pre-*Booker* calculation of the guideline range, and a formal ruling on factual disputes and departure motions. It reasons that because the guidelines remain an integral part of the sentencing process, an accurately calculated range is a critical starting point in the district court's analysis. This view rejects that of the Seventh and Ninth Circuits, which have ruled that guideline departures are obsolete in the wake of *Booker*.

The three-step procedure requires judges to **(1)** calculate the guideline range correctly, adhering to the manual's application principles and resolving factual disputes affecting the calculation; **(2)** formally rule on departure motions in light of the (now advisory) pre-*Booker* case law, stating clearly how a departure affects the guidelines calculation; and **(3)** exercise discretion under §3553(a) by *meaningfully* considering the *relevant* factors it lists – merely reciting them for the record is insufficient – and imposing a sentence "regardless of whether it varies from the sentence calculated under the Guidelines." *United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006).

The Circuit specifically endorses the terminology of "departure" to refer to a sentence outside of the range that was contemplated by the guidelines system, and "variance" to refer to a sentence outside of the range that was imposed under the court's discretion pursuant to §3553(a). It asks that district courts and counsel employ this

4

terminology as well. *United States v. Jackson*, 467 F.3d 834, n.2 (3d Cir. 2006). For now, the Third Circuit directs that the first two steps be done precisely. However, it leaves open the possibility that in some cases, errors committed during the first two steps may be harmless, in light of the fact that it is the ultimate sentence imposed at step three that is subject to the reasonableness review. *Id.* at n.6.

The bottom line is that the Third Circuit's post-*Booker* jurisprudence manifests a fundamental respect for judicial discretion and substantial deference to sentencing judges, as long as the record adequately explains the reasons for the sentence and reflects judicial consideration of the relevant factors under § 3553(a). Thus far, it has only reversed cases for procedural irregularities (not substantive reasonableness), such as where the record does not reflect the reasons for the sentence, or where the district court found that it had no discretion to consider a particular factor. This encourages judges to impose a sentence that truly "fits the crime and the criminal," guided principally by the statute's universal directive that a court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing.

The Guidelines provide that a downward departure may be warranted "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes."

IV.   **IMPORTANT FACTORS TO CONSIDER PRIOR TO SENTENCING PURSUANT TO § 3553(a) / VARIANCES FROM THE SENTENCING GUIDELINES**

A "variance" – i.e., a sentence outside the guideline range other than as provided

for in the Guidelines Manual – is considered only after departures have been considered. Courts have held that variances are not subject to the guideline analysis for departures—in some cases, a circumstance prohibited for departure may be considered as a basis for a variance. See, e.g., *United States v. Chase*, 560 F.3d 828 (8th Cir. 2009) (holding that "departure precedent does not bind district courts with respect to variance decisions, it is merely persuasive authority").

In *United States v. Gall*, 552 U.S. 38 (2007), the Court made clear that judges are obliged to consider all relevant factors relating to the "nature and circumstances of the offense and history and characteristics of the offender," 18 U.S.C. § 3553(a)(1), including factors the Commission's policy statements deem prohibited or "not ordinarily relevant." *See* U.S.S.G., ch. 5, pts. H & K.

### § 3553(a) FACTORS TO CONSIDER

The defense now would point to the following factors that this Honorable Court should consider when fashioning the defendant's sentence:

**1) THE OFFENSE LEVEL SHOULD BE CALCULATED AS 12**

The defense makes the argument that the offense level should be 12, not 14. This would make the final Guideline range 15 -21 months [14 / I; +2 points are added because of the number of guns involved] In the PSR, the Guideline range is calculated at 14 because the guns were transferred to a "prohibited person". The defendant was not yet convicted and the charge was open at the time. The problem is proving that Baker knew that her boyfriend was a "prohibited person". The defense contends that this issue is similar to the issue in *Rehaif v. United States*. In *Rehaif*, the

Supreme Court held that this *mensrea* element "applies both to the defendant's conduct and to the defendant's status" and that "the Government must therefore show that the defendant knew he possessed a firearm and also that he knew he had the relevant status [(e.g., that he was a felon)] when he possessed it." *Rehaif*, 139 S. Ct. at 2194.

Thus, the Government was required to prove at trial that the person whom the guns were being transfer [Donte Maxwell] was (1) under Indictment (2) for a crime punishable by imprisonment for a term exceeding one year.  There is no doubt that Baker was aware that Maxwell was charged in a criminal case.  We know this because the agents asked her during the interview. That covers this first prong. However, the defense contends that the agents never took the additional step to ask, "what was he arrested for?" and then "Do you happen to know that statutory maximums for the crimes?"  Frankly, most attorneys who do not practice criminal law would not know the statutory maximums for any given crime, so why should we expect Baker to know that a Misdemeanor of the 2nd degree carries a statutory maximum of 2 years?  Thus, the base offense level should be 12 because the prosecution did not prove this at trial.  So, the defense contends that the final offense level should be 14 / I with a recommended guideline range of 15 - 21.

If the Court agrees that 14 is the proper final offense level, then that would place Baker on the cusp of Zone D which requires a flat sentence of imprisonment.  The defense would ask the Court to apply a variance for the reasons stated in the memorandum and at sentencing.  This variance would seek to place Baker in offense

level 13, which is in Zone C.  The Guidelines indicate that a defendant in Zone C may receive a "split sentence" of jail and home confinement.

See USSG §§5B1.1, 5C1.1 (defendants in Zones A and B may receive a probationary sentence or a sentence of incarceration, in the court's discretion; defendants in Zone C may receive a "split" sentence of incarceration followed by community confinement or a sentence of incarceration only at the court's discretion; and defendants in Zone D may only receive a sentence of imprisonment absent a downward departure or variance from that zone).

**2) THIS CRIME IS UNLIKELY TO OCCUR AGAIN**

Now that the defendant has a criminal record, she is not capable of obtaining firearms to give to other people.  As a result, she is unable to repeat her actions in this case and the Court can rest assured that it cannot occur again.  Also, counsel believes that the defendant found herself in this position because she is mild mannered and was pressured to commit this crime because her boyfriend wanted the guns.  She did not commit this crime for financial incentive.

**3) THE DEFENDANT HAS LEAD AN OTHERWISE LAW ABIDING LIFE**

The defendant is 25 years old.  She has no prior juvenile or adult convictions or even arrests.   The defendant had prior work experience at Citizens Bank Park.  The defendant has a young son and provides for him.  This case is an aberration on an otherwise law-abiding life.  A sentence of 12 months of home confinement would send a serious message to both Baker and the public that committing such a serious offense has consequences.  Home confinement can permit the defendant to work and

8

provide for her young son. Justice would not be served by sending the defendant to jail.

## VII.   CONCLUSION

The defendant is first requesting that your Honor find the applicable Guideline range to be 15 – 21 months based on a final offense level of 14.  The defendant would then ask the Court to apply a downward variance and sentence the defendant in the 12 – 18 range [Zone C].  Finally, the defendant would ask that your Honor impose a split sentence of  6 months incarceration followed by 6 months to be served on home confinement.

Respectfully submitted,

LAWRENCE J. BOZZELLI<br>Attorney for B. Baker

## **CERTIFICATE OF SERVICE**

I, Lawrence J. Bozzelli, attorney for the Defendant, hereby certify that I have served copies of the Defendant's Sentencing Memorandum to the Honorable Juan Sánchez and AUSA Michael Miller.

LAWRENCE J. BOZZELLI
Attorney for B. Baker

DATE: February 10, 2022